UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

               Plaintiff,

        -against-

UP TO $6,100,000 ON DEPOSIT IN
ACCOUNT NO. ███5876 AT BANK JULIUS
BAER CO. LTD (GUERNSEY BRANCH);
AND

UP TO $3,651,339 ON DEPOSIT IN
ACCOUNT NO. ███5568 AT BANK JULIUS
BAER CO. LTD (GUERNSEY BRANCH),

               Defendants in Rem.

            07 Civ. 04430 (RJS)

AJAZ RAHIM,

               Claimant.

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE CLAIM OF AJAZ RAHIM OR FOR SUMMARY JUDGMENT

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

BARBARA A. WARD
JOSHUA KLEIN
REED M. BRODSKY
Assistant United States Attorneys
     Of Counsel

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

BACKGROUND ............................................................................... 2

    A.    <u>Procedural History</u> ............................................................ 2

        1.    The Criminal Complaints ........................................... 2

        2.    The Forfeiture Complaint ........................................... 3

        3.    The Indictment ....................................................... 5

        4.    Naseem's Trial and Sentencing .................................... 6

        5.    Rahim Has Not Appeared in the Related Criminal Case .......... 7

    B.    <u>The Offense Conduct</u> ......................................................... 7

ARGUMENT:

    THE COURT SHOULD APPLY THE FUGITIVE
    DISENTITLEMENT DOCTRINE AND STRIKE
    RAHIM'S CLAIM ............................................................. 8

    A.    <u>The Summary Judgment Standard</u> ......................................... 9

    B.    <u>The Fugitive Disentitlement Doctrine</u> ..................................... 9

    C.    <u>Discussion</u> ..................................................................... 12

        1.    <u>The Statutory Prerequisites to Disentitlement Are Satisfied</u> .... 12

        2.    <u>The Court Should Exercise Its Discretion To Dismiss Rahim's Claim</u> .... 12

CONCLUSION ............................................................................... 17

TABLE OF AUTHORITIES

Cases:

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................. 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................... 9

*Collazos v. United States*, 368 F.3d 190 (2d Cir. 2004) ................... 10, 11, 12, 14, 15

*Degen v. United States*, 517 U.S. 820 (1996) ........................................ 11

*Donohue v. Winsor Lock Bd. Of Fire Commissioners*,
834 F.2d 54 (2d Cir. 1987) ........................................................ 9

*Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1223 (2d Cir. 1994) .............. 9

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980) .............. 9

*Rohlsen v. DEA Atlanta Airport Task Force*, 2005 WL 878573,
2005 U.S. Dist. LEXIS 25163 (N.D. Ga.2005) ........................................ 10

*United States v. 10 Meadow Lane*, No. CRIM. 104CV272, 2005 WL 1530252,
(N.D. W. Va. June 6, 2005) ........................................................ 16

*United States v. $138,381*, 240 F.Supp.2d 220, 226 (E.D.N.Y. 2003) ..................... 16

*United States v. $1,278,795*, No. Civ.A. L-03-87, 2006 WL 870364
(S.D. Tex. March 30, 2006) ........................................................ 15

*United States v. $6,976,934.65 Plus Interest*, 478 F.Supp.2d 30 (D.D.C. 2007) ...... 10, 13, 14

*United States v. $6,976,934.65 Plus Interest*, 486 F.Supp.2d 37 (D.D.C. 2007) ............ 10

*United States v. All Funds on Deposit at Citigroup Smith Barney ...*
*(Kobi Alexander), etc.*, No. 06-CV-3730 (NGG), 2007 WL 2687660
(E.D.N.Y. Sept. 10, 2007) ......................................................... 15

*United States v. All Right, Title, and Interest in Real Property and*
*Appurtenances Located at Trump World Towers*, No. 03 Civ. 7967(RCC),
2004 WL 1933559 (S.D.N.Y. Aug. 31, 2004) .......................................... 16

*United States v. All Right, Title, and Interest in Real Property,*
*Appurtenances and Improvements Known as 479 Tamarind Drive*,
No. 98 Civ. 2279 (RLC), 2005 WL 2649001 (S.D.N.Y. Oct. 14 2005) . . . . . . . . . . . . . 13, 15, 16

*United States v. Contents of Account No. 68108021 (Collazos)*,
228 F.Supp.2d 436, 440 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Eng*, 951 F.2d 461 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. One 1988 Chevrolet Cheyenne Half-Ton Pickup Truck*,
357 F.Supp.2d 1321, 1328 (S.D. Ala. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Wyler v. United States*, 725 F.2d 156 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Statutes and Rules</u>:

15 U.S.C. §§ 78j(b) and 78ff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17 C.F.R. § 240.10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17 C.F.R. § 240.10b5-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 981(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 8

18 U.S.C. § 983(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 984 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

28 U.S.C. § 2641 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 2466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 11, 15

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Supplemental Rules for Admiralty or Maritime Claims
and Asset Forfeiture Actions, Rule E(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Supplemental Rules for Admiralty or Maritime Claims
and Asset Forfeiture Actions, Rule G(5)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Session Laws</u>:

Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 106-185, 114 Stat. 202 (2000)  . . . . . 10


<u>Treatises</u>:

Cassella, *Asset Forfeiture Law in the United States*, § 9-2 (2007)  . . . . . . . . . . . . . . . . . . . . . . 15

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: BARBARA A. WARD
    JOSHUA KLEIN
    REED BRODSKY
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Tel. (212) 637-1048/2397/2492

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           Plaintiff,

      -against-

UP TO $6,100,000 ON DEPOSIT IN
ACCOUNT NO. ███5876 AT BANK JULIUS
BAER CO. LTD (GUERNSEY BRANCH);
AND

UP TO $3,651,339 ON DEPOSIT IN
ACCOUNT NO. ███5568 AT BANK JULIUS
BAER CO. LTD (GUERNSEY BRANCH),

           Defendants in Rem.

           07 Civ. 04430 (RJS)

AJAZ RAHIM,

           Claimant.

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO STRIKE THE CLAIM OF AJAZ RAHIM
OR FOR SUMMARY JUDGMENT

      In this civil forfeiture action, the United States seeks the forfeiture of funds on deposit in

two accounts in Guernsey pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984, as property

constituting or derived from proceeds traceable to fraud in the sale of securities. Ajaz Rahim

("Rahim"), a fugitive defendant in the related criminal case, has filed a statement of interest

claiming a legal interest in both accounts and contesting the forfeiture. The United States now

moves, pursuant to Rules 12(b)(1), 12(c), and 56 of the Federal Rules of Civil Procedure, and

pursuant to 28 U.S.C. § 2466(a), for an order striking his claim, or for summary judgment,

pursuant to the fugitive disentitlement doctrine. As a fugitive defendant in the criminal case

related to this forfeiture action, Rahim should not be permitted to contest the forfeiture in this

Court while refusing to face the criminal charges pending against him in the same Court .

## BACKGROUND

A.    Procedural History

This civil forfeiture action and the related criminal case filed in the Southern District of

New York arise out of a scheme whereby Hafiz Muhammad Zubair Naseem ("Naseem"), an

investment banker with Credit Suisse's Global Energy Group in New York, stole material,

nonpublic information from Credit Suisse and its clients about nine pending mergers and

acquisitions and tipped Ajaz Rahim ("Rahim"), a resident of Pakistan, about these deals prior to

their public announcement. Rahim traded on the basis of this information in several overseas

brokerage accounts, yielding at least $7.8 million in proceeds.

1.    The Criminal Complaints

On May 3, 2007, as a result of an investigation conducted by the Federal Bureau of

Investigation ("FBI"), Criminal Complaint 07 Mag. 706 was filed in the Southern District of

New York charging Naseem with one count of conspiracy to commit fraud in connection with

the purchase and sale of securities, and 25 counts of substantive securities fraud. Based on the

affidavit of FBI Special Agent Paul Higgins, a United States Magistrate Judge found probable

cause that from in or about April 2006 through in or about February 2007, Naseem and others

2

participated in a scheme to defraud by providing material, non-public information regarding

forthcoming announcements relating to acquisitions of nine publicly traded companies to a

co-conspirator, who then executed illegal trades in the securities of the target companies.  (See

Declaration of Assistant United States Attorney Joshua Klein ("Klein Declaration" or "Klein

Decl."), ¶ 3) .

On May 29, 2007, as a result of the same investigation, Criminal Complaint 07 Mag. 859

was filed in the Southern District of New York charging Ajaz Rahim with one count of

conspiracy to commit fraud in connection with the purchase and sale of securities, and 25 counts

of substantive securities fraud.  Based on the affidavit of Special Agent Higgins, a United States

Magistrate Judge found probable cause that from in or about April 2006 through in or about

February 2007, Rahim, Naseem and others participated in a scheme to defraud by executing the

illegal securities transactions described above.  (See Klein Decl., ¶ 4).[1]

2.    The Forfeiture Complaint

On or about May 30, 2007, the United States filed Verified Complaint No. 07 Civ. 4430

(RJS) (the "Verified Complaint") seeking forfeiture of up to $6,100,000 on deposit in Account

No. ▮5876 at Bank Julius Baer Co. Ltd. (Guernsey Branch) ("Account A"); and up to

$3,651,339 on deposit in Account No. ▮5568 at Bank Julius Baer Co. Ltd. (Guernsey Branch)

("Account B") (hereinafter referred to collectively as the "Defendant Funds").  The Verified

Complaint alleges that the Defendant Funds are forfeitable pursuant to 18 U.S.C.

§§ 981(a)(1)(C) and 984 as property constituting or derived from proceeds traceable to specified

unlawful activity, namely, fraud in the sale of securities, in violation of 15 U.S.C. §§ 78j(b) and

---

[1] Copies of the Criminal Complaints (hereinafter referred to together as the "Criminal Complaints") are attached as Exhibits A and B, respectively, to Exhibit 1 of the Klein Declaration, which is submitted in support of this motion.

78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2.[2]  (See Klein Decl., ¶ 5).[3]  The allegations of the Verified Complaint are substantially similar to those set forth in the Criminal Complaints (and the Indictment, as discussed below).  (Klein Decl., ¶ 6 & Ex. 1, ¶¶ 4-7) (incorporating allegations of Criminal Complaints)).

On or about October 18, 2008, Ajaz Rahim filed a Verified Statement of Interest claiming an interest in the Defendant Funds, pursuant to Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules").[4] Rahim claims an interest in the Funds on deposit not only in Account A, which is held in his own name, but also in Account B, which is held in the name of his now former wife, Hina Ajaz.  (*See* Verified Statement of Interest of Ajaz Rahim filed on or about October 18, 2007, ¶ 4) ("Pursuant to Rule E(8) of the Supplemental Rules I appear before this Court for the limited purpose of defending against the claims initiated by the Government in the above-captioned in rem action. My appearance in the above-captioned action does not constitute an appearance for the purpose of any other claim or consent to the jurisdiction of this court or any other court.") ( Klein Decl., ¶ 7 & Ex. 3).

On or about October 19, 2007, Hina Ajaz filed a Verified Claim asserting an interest in and contesting the forfeiture of the Defendant Funds.   (See Klein Decl., ¶ 8 & Ex. 2).

---

[2]  A copy of the Verified Complaint is attached to the Klein Declaration as Exhibit 1.  A copy of the docket sheet in the above-captioned case is attached to the Klein Declaration as Exhibit 2.

[3]  Copies of the Criminal Complaints (hereinafter referred to together as the "Criminal Complaints") are attached as Exhibits A and B, respectively, to Exhibit 1 of the Klein Declaration, which is submitted in support of this motion.

[4]  Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (2008).

4

On July 18, 2008, the Government submitted a letter requesting leave to file a motion to dismiss or for summary judgment to dismiss Rahim's claim based on the fugitive disentitlement doctrine, or in the alternative, for a pre-motion conference. The Court held a pre-motion conference on August 8, 2008. In an order entered August 12, 2008, granted the Government's request for leave to file the motion for summary judgment and directed that it be filed by August 29, 2008.

3.    The Indictment

On or about July 3, 2007, a federal grand jury in the United States District Court for the Southern District of New York issued Indictment 07 Cr. 610 in 26 counts, charging Naseem and Rahim with conspiracy to commit securities fraud and substantive securities fraud. On or about November 20, 2007, Superseding Indictment S1 07 Cr. 610 was returned in 29 counts, containing substantially the same allegations. (The Superseding Indictment is referred to hereinafter as the "Indictment" and is attached as Exhibit 4 to the Klein Declaration. See Klein Decl., ¶ 9 & Ex. 4).

The allegations of the Indictment are substantially similar to those set forth in the Criminal Complaint and the Verified Complaint. The Indictment charges that from in or about March 2006 through at least in or about February 2007, Ajaz Rahim and Hafiz Muhammad Zubair Naseem, and others, participated in a scheme to defraud by executing securities transactions based on material, non-public information regarding forthcoming announcements relating to acquisitions of the following nine publicly traded companies: Northwestern Corporation, Energy Partners, Ltd., Veritas DGC Inc., Jacuzzi Brands, Inc., Trammell Crow Co., Hydril Company, Caremark RX, Inc., John H. Harland Co., and TXU Corp. (the "Issuers"). Credit Suisse was engaged to advise either the target company or the acquiring entity in

5

connection with business combination transactions involving the Issuers. Naseem had access to an internal Credit Suisse database that contained information about certain of these transactions. (Indictment ¶¶ 6-7 (Klein Decl., ¶ 10 & Ex. 4, ¶¶ 6-7).

The Indictment alleges that Naseem regularly and repeatedly called Rahim and provided him with Credit Suisse inside information regarding these business combination transactions in violation of (a) the duties of trust and confidence owed by Naseem to Credit Suisse and its clients, and (b) Credit Suisse's written policies regarding the use and safekeeping of confidential and inside information. (Klein Decl., ¶ 11 & Ex. 4, ¶¶ 7, 11(a) and (b)).

The Indictment also contains a criminal forfeiture allegation pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2641 seeking forfeiture of all property constituting or derived from proceeds traceable to the charged offenses. (See Klein Decl., ¶ 12 & Ex. 4, ¶¶ 15-16). On or about October 9, 2007, the Government filed a Bill of Particulars providing notice that the property subject to forfeiture as proceeds of the offenses charged in the Indictment includes all of Rahim's right, title and interest in the Defendant Funds. (Klein Decl., ¶ 13 & Ex. 5).

4.     Naseem's Trial and Sentencing

On February 4, 2008, following a three-week jury trial before the Honorable Robert P. Patterson, Naseem was convicted of one count of conspiracy and 28 substantive counts of insider trading. On June 4, 2008, Judge Patterson sentenced Naseem to ten years' imprisonment, to be followed by three years' of supervised release, a mandatory special assessment of $2,900, and criminal forfeiture of $9,000,000. (Klein Decl., ¶ 16).

5.    Rahim Has Not Appeared in the Related Criminal Case

Rahim has not been arrested here or abroad or otherwise appeared in the Related

Criminal Case. (Klein Decl., ¶ 17). However, he is aware of the Indictment and the charges

outstanding against him. (Klein Decl., ¶ 18).

B.    The Offense Conduct

From March 2006 through at least in or about February 2007, Naseem stole material,

nonpublic information from Credit Suisse and its clients regarding the nine publicly traded

companies referred to as the Issuers." Credit Suisse was engaged to advise either the target

company or the acquiring entity in connection with business combination transactions involving

the Issuers (the "Subject Transactions"). Naseem, who was not assigned to work on any of the

Subject Transactions, repeatedly searched Credit Suisse's internal computer databases for

confidential documents relating to the Subject Transactions, opened and read these documents,

and passed material non-public information concerning the Subject Transactions in these

documents to Rahim (the "Credit Suisse Inside Information"). Naseem also was observed

rummaging through papers on the desks of analysts. (Klein Decl., ¶ 14).

Naseem provided the Credit Suisse Inside Information to Rahim in violation of the duties

of trust and confidence owed by Naseem to Credit Suisse and its clients and Credit Suisse's

written policies regarding the use and safekeeping of confidential and inside information.

Naseem typically called Rahim in Pakistan in advance of a public announcement that a particular

Issuer was to be acquired by another entity. He then provided Credit Suisse Inside Information

to Rahim regarding the acquisition in question. Shortly after receiving such a call, Rahim

purchased securities in that Issuer based on the Credit Suisse Inside Information. Rahim

purchased the securities weeks before any public announcement was made regarding the Subject

Transactions.  Following public disclosure that an Issuer was being acquired, Rahim sold all of

the securities that had been purchased, yielding millions of dollars in profits.  Rahim executed

dozens of purchases and sales based on the Credit Suisse Inside Information.  Rahim used

Accounts A and B at Bank Julius Baer to execute some of the trades and also deposited proceeds

from some of the sales back into the accounts.  (Klein Decl., ¶ 14).  $6,100,000 in proceeds

from such sales was deposited in Account A, and $3,651,339 was deposited in Account B.

(Klein Decl., ¶ 15 & Ex. 3 (Verified Complaint), ¶ 8).

The Government would, accordingly, be able to establish by a preponderance of the

evidence in this related civil forfeiture case, as required by 18 U.S.C. § 983(c)(1), that the

Defendant Funds are forfeitable to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and

984 as property constituting or derived from proceeds traceable to fraud in the sale of securities.

ARGUMENT

THE COURT SHOULD APPLY THE<br>FUGITIVE DISENTITLEMENT DOCTRINE<br>AND STRIKE RAHIM'S CLAIM

Rahim has not been arrested or otherwise appeared, although he is aware of the

Indictment and charges outstanding against him.  He nonetheless has filed a claim in this related

*in rem* action seeking forfeiture of what the Government alleges are the proceeds of the offenses

with which he is charged.  As a fugitive from justice in a criminal case related to this forfeiture

action, Rahim should be barred from contesting the forfeiture.  Because there are no material

issues of disputed fact with respect to this issue, the United States is entitled to summary

judgment dismissing Rahim's claim pursuant to the fugitive disentitlement doctrine.

A.    The Summary Judgment Standard

Summary judgment enables the court to dispose of meritless claims before becoming entrenched in a costly trial. *Donohue v. Winsor Lock Bd. Of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987). A moving party is entitled to summary judgment if the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1223 (2d Cir. 1994). The moving party bears the initial burden of demonstrating that no "genuine issue" of "material fact" exists. *Id.*, *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party meets this burden "by showing that little or no evidence may be found in support of the non-moving party's case." *Id.* "[T]he mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980); *see also Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) (conclusory and speculative responses cannot defeat adequately-pled motion for summary judgment). Such a dispute is not "genuine," and the party opposing summary judgment must show that there is more than a "metaphysical doubt." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

B.    The Fugitive Disentitlement Doctrine

Under the fugitive disentitlement doctrine, codified at 28 U.S.C. § 2466, this Court has authority to dismiss a claim in a civil forfeiture action where, after notice that a warrant has been issued for the claimant's arrest, the claimant evades the jurisdiction of the court in which a related criminal case is pending against the claimant. The Government submits that the

9

application of the fugitive entitlement doctrine is a threshold issue and thus should be considered

before entertaining any challenge to the forfeiture by the claimant and prior to the

commencement of discovery. *See United States v. $6,976,934.65 Plus Interest*, 478 F.Supp.2d

30, 45 (D.D.C. 2007) (because applying the fugitive disentitlement doctrine will bar a claimant

from contesting a forfeiture on any ground, the court must rule on the Government's section

2466 motion before addressing any motion filed by the claimant); *see also United States v.*

*$6,976,934.65 Plus Interest*, 486 F.Supp.2d 37, 38-39 (D.D.C. 2007).

On April 25, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000

("CAFRA"), 106-185, 114 Stat. 202 (2000). CAFRA was "the most comprehensive revision of

the civil asset forfeiture laws to be passed by Congress since the first forfeiture statutes were

enacted in 1789." *Rohlsen v. DEA Atlanta Airport Task Force*, 2005 WL 878573, 2005 U.S.

Dist. LEXIS 25163 at *10 (N.D. Ga. 2005). The "disentitlement" provision of CAFRA, codified

at 28 U.S.C. § 2466 sought to address the "unseemly spectacle" of "a criminal defendant who,

facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance

only so much of a United States court's jurisdiction as might secure him the return of alleged

criminal proceeds while carefully shielding himself from the possibility of a penal sanction."

*Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004).[5]  The statute provides in pertinent

part that:

> (a) A judicial officer may disallow a person from using the resources
> of the courts of the United States in furtherance of a claim in any
> related civil forfeiture action or a claim in third party proceedings in
> any related criminal forfeiture action upon a finding that such person--
>
> (1) after notice or knowledge of the fact that a warrant or process has
> been issued for his apprehension, in order to avoid criminal
> prosecution–
>
>> (A) purposely leaves the jurisdiction of the United States;
>>
>> (B) declines to enter or reenter the United States to submit to
>> its jurisdiction; or
>>
>> (C) otherwise evades the jurisdiction of the court in which a
>> criminal case is pending against the person; and
>
> (2) is not confined or held in custody in any other jurisdiction for
> commission of criminal conduct in that jurisdiction.

28 U.S.C. § 2466(a).  Where the statutory requirements are met, the decision whether to order

disentitlement is discretionary.  *Collazos*, 368 F.3d at 198.

Congress added Section 2466 to give courts express statutory authority to dismiss a claim

in a civil forfeiture action where, after notice that a warrant has been issued for the claimant's

arrest, the claimant evades the jurisdiction of the court in which a related criminal case is

---

[5]    Prior to the enactment of Section 2466(a) in CAFRA, federal courts had developed a rule
known as the fugitive disentitlement doctrine that allowed the a district court to grant a motion to
strike a claim filed in a civil forfeiture case by a person who was a fugitive in the criminal case
that arose out of the same facts and circumstances. *See, e.g., United States v. Eng*, 951 F.2d 461,
464 (2d Cir. 1991) ("a person who is a fugitive from justice may not use the resources of the
civil legal system while disregarding the lawful orders in a related criminal action").  In *Degen v.
United States*, 517 U.S. 820 (1996), the Supreme Court held that federal courts were barred from
striking an otherwise valid claim solely on the basis of the claimant's status as a fugitive.  The
Supreme Court made clear that while the federal courts could not impose such a rule on their
own, Congress could correct the problem by enacting appropriate legislation. *See id.* at 828.
CAFRA included a legislative response to *Degen*, now codified in 28 U.S.C. § 2466. *See
Collazos*, 368 F.3d at 198-99 (Section 2466 is Congress's response to *Degen*).

11

pending against the claimant.  The underlying rationale of Section 2466 is that defendants should not be permitted to tax judicial resources to litigate civil forfeiture claims while simultaneously evading jurisdiction to avoid criminal prosecution.  That is precisely what Rahim is attempting to do here: to use the resources of the federal courts to pursue a civil forfeiture claim for his benefit, while knowingly evading the jurisdiction of the same federal court to avoid criminal prosecution in a related criminal case.  The Court therefore should dismiss Rahim's claim.

C.       Discussion

       In this case, there can be no dispute that the five statutory prerequisites to disentitlement are met.  A warrant has been issued for Rahim's arrest; Rahim has knowledge of the warrant; the criminal case is related to the forfeiture action; Rahim is not in custody in another jurisdiction; and he has deliberately avoided prosecution.  Thus, Rahim qualifies as a fugitive whose claims may be stricken.  There is no reason, moreover, that this Court should not exercise its discretion and strike Rahim's claim.

       1.       The Statutory Prerequisites to Disentitlement Are Satisfied

       By its terms, Section 2466 identifies five prerequisites to disentitlement: (1) that a warrant be issued for the claimant's arrest; (2) that the claimant have knowledge of the warrant; (3) that the criminal case be related to the forfeiture action; (4) that the claimant not be held in custody in another jurisdiction; and (5) that the claimant have deliberately avoided prosecution. *Collazos*, 368 F.3d at 198.  Rahim clearly satisfies each of the criteria outlined in the statute and qualifies as a fugitive whose claims may be stricken.

       With respect to the first and second criteria, there can be no dispute that a warrant has been issued for Rahim's arrest and that he is aware that he is wanted in the United States on the charges in the Indictment.  (See Klein Decl. ¶¶ 9, 17-18).

12

Nor can there be any dispute that this forfeiture action is related to the pending criminal case. In *Collazos*, the court held that the relatedness requirement of Section 2466 is satisfied if the two cases arise out of the same facts, circumstances and illegal activity, or if the forfeiture allegation in the criminal case seeks forfeiture of the same property. *See United States v. Contents of Account No. 68108021 (Collazos)*, 228 F.Supp.2d 436, 440 (S.D.N.Y. 2002), *aff'd*, 368 F.3d 290 (2d Cir. 2004). Here, the Verified Complaint tracks much of the language in the affidavits in support of the Criminal Complaints as well as the language in the Superseding Indictment. (*Compare* Klein Decl., Ex. 1, ¶¶ 4-7, with Klein Decl., Ex. 4, ¶¶ 1-8, 11). Moreover, in a Bill of Particulars filed on or about October 9, 2007, the Government provided notice that the property subject to forfeiture as proceeds of the offenses charged in the Related Criminal Case includes all of Rahim's right, title and interest in the Defendant Funds. (Klein Decl., ¶ 13 & Ex. 5).

The fourth requirement, that the claimant not be confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction, is satisfied here because Rahim is not in custody, and he is able, should he choose to do so, to return to the United States. *See United States v. All Right, Title, and Interest in Real Property, Appurtenances and Improvements Known as 479 Tamarind Drive*, No. 98 Civ. 2279 (RLC), 2005 WL 2649001, *3 (S.D.N.Y. Oct. 14 2005) ("*Tamarind Drive*") (if claimant forfeited right to contest extradition, he was free to leave foreign country; "[t]herefore, the conditions of his release on bond do not preclude the court from subjecting [claimant] to fugitive disentitlement").

The fifth requirement – that the claimant have deliberately avoided prosecution – is satisfied because, despite knowledge of the pending charges in this district, Rahim has not come to the United States to face the charges. Rahim's counsel has posited that Rahim is not a fugitive

because he did not flee from the United States or otherwise depart from his usual place of abode upon learning that criminal charges were levied against him, but rather is a citizen of Pakistan, where he has lived and worked during all times relevant to this action. (*See* Joint Letter filed by the Government and Rahim's counsel, July 10, 2008, at 4) (Klein Decl., Ex. 7). The same argument was addressed by the Court of Appeals in *Collazos*, where the claimant argued that she was not in the United States at the time of the commission of the money laundering offense giving rise to the forfeiture, and thus could not be considered a "fugitive." The Court of Appeals rejected this argument, holding that in CAFRA, Congress had expanded the definition of fugitive to include individuals who decline to enter or re-enter the United States to submit to its jurisdiction, even if the person committed the crime without setting foot in the United States. *See Collazos*, 368 F.3d at 198-200 (statute applies to defendants who committed their crimes extraterritorially and "although they may have never set foot within the territorial jurisdiction of the United States, know that warrants are outstanding for them and, as a result, refuse to enter the country"); *see also $6,976,934.65 Plus Interest*, 478 F.Supp.2d at 41 (Government may show that a claimant is a fugitive in a variety of ways; that he refused to reenter the United States to answer the criminal charges is one way; that he renounced his U.S. citizenship to avoid extradition is another); *United States v. One 1988 Chevrolet Cheyenne Half-Ton Pickup Truck*, 357 F.Supp.2d 1321, 1328 (S.D. Ala. 2005) (one does not have to flee the United States in response to notice of criminal charges to be a fugitive; refusal to reenter the United States is sufficient). Evading criminal charges does not have to be the claimant's only reason for remaining outside the United States. *United States v. $6,976,934.65*, 478 F.Supp.2d at 39 (that claimant would have remained outside the United States even if there were no warrant for his

14

arrest is not a defense; as long as he was aware of the charges and purposefully declined to appear to answer them, he is a fugitive).

Rahim thus satisfies each of the criteria outlined in the statute. A warrant has been issued for his arrest in the Related Criminal Case. Rahim is not in custody, and he is able, should he choose to do so, to come to the United States. He is aware of the charges pending against him in this district but has not come to face those charges. He therefore is a fugitive as defined by the statute. *See* 28 U.S.C. § 2466(a); *Collazos*, 368 F.3d at 198-201.

       2.      <u>The Court Should Exercise Its Discretion To Dismiss Rahim's Claim</u>

Since Rahim satisfies the statutory criteria set forth in Section 2466, the decision whether to order disentitlement now rests in the "sound discretion" of this Court. *Collazos*, 368 F.3d at 198. The Court should not permit Rahim to avail himself of this Court's jurisdiction to claim property while knowingly evading its jurisdiction to avoid criminal prosecution. *See id.* at 200; *United States v. All Funds on Deposit at Citigroup Smith Barney ... (Kobi Alexander), etc.*, No. 06-CV-3730 (NGG), 2007 WL 2687660, at *19 (E.D.N.Y. Sept. 10, 2007) ("*Alexander*"); *Tamarind Dr.*, 2005 WL 2649001, at *3.

Although the authority to order disentitlement is discretionary, "courts generally have not been sympathetic to fugitives who have refused to enter or re-enter the United States to answer criminal charges." Cassella, *Asset Forfeiture Law in the United States*, § 9-2, at 313 (2007). *See, e.g., Collazos*, 368 at 201-04; *United States v. $1,278,795*, No. Civ.A. L-03-87, 2006 WL 870364, at *1-2 (S.D. Tex. March 30, 2006) (dismissing claim because warrant had issued and claimant fled in order to avoid prosecution); *One 1988 Chevrolet Cheyenne*, 357 F.Supp.2d at 1333 ("the issue today is whether [claimant] should be permitted to avail himself of the jurisdiction of this Court to reclaim property that he claims belongs to him even as he disrespects

the jurisdiction of this Court to institute criminal proceedings against him based on his alleged criminal activities involving that very property"); *Tamarind Drive*, 2005 WL 2649001, at*3 ("As a fugitive from justice, [claimant] has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim") (quotation marks omitted); *United States v. All Right, Title, and Interest in Real Property and Appurtenances Located at Trump World Towers*, No. 03 Civ. 7967(RCC), 2004 WL 1933559, at *2 (S.D.N.Y. Aug. 31, 2004) ("*Trump Towers*") ("a claimant may not use the resources of a federal court for personal benefit while knowingly evading the jurisdiction of the same court to avoid criminal prosecution"); *United States v. 10 Meadow Lane*, No. CRIM. 104CV272, 2005 WL 1530252, at *1-2 (N.D. W. Va. June 6, 2005) (summary judgment granted against fugitive who successfully fought extradition); *United States v. $138,381*, 240 F.Supp.2d 220, 226 (E.D.N.Y. 2003) (granting summary judgment to government because claimant was a fugitive as defined by statute).

The disrespect that Rahim has shown the Court by evading its criminal jurisdiction is itself sufficient grounds to preclude him from using the Court's resources to appear in this related case and challenge the forfeiture. The Court should exercise its discretion and apply the fugitive disentitlement doctrine in favor of the Government "to protect the integrity of the judicial process." *Tamarind Drive*, 2005 WL 2649001, at *3.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court strike the

statement of interest filed by Ajaz Rahim.

Dated:  September 2, 2008
        New York, New York

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              UNITED STATES ATTORNEY
                              ATTORNEY FOR PLAINTIFF
                              THE UNITED STATES OF AMERICA


                    By:  _____/s/_____
                              BARBARA A. WARD
                              JOSHUA KLEIN
                              REED M. BRODSKY
                              Assistant United States Attorneys

17